## MARSHALL CONSTRUCTION COMPANY, LIMITED, *v.* LYMAN H. BIGELOW, JAMES WAKEFIELD, JAMES L. FRIEL, JAMES WINNE AND SHERWOOD LOWREY, MEMBERS OF THE BOARD OF HARBOR COMMISSIONERS.

### No. 1646.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. J. BANKS, JUDGE.

ARGUED MARCH 1, 1926.                    DECIDED MARCH 29, 1926.

PERRY, C. J., LINDSAY, J., AND CIRCUIT JUDGE PARSONS IN PLACE OF BANKS, J., DISQUALIFIED.

PLEADING—*mandamus—conclusions of law.*

An allegation in an alternative writ of mandamus that "petitioner's said tender was rejected by said board, not in the exercise of any discretion vested in it, or the members thereof, by law, but arbitrarily and capriciously, and upon the pretext and subterfuge that said tender was not, or might not be, the lowest tender," is not a mere conclusion of law but is an allegation of fact.

OFFICERS—*letting of public contracts.*

Under a statute providing for the letting of public contracts, awarding officers are not given absolute, unrestricted power to reject any or all bids, but must let the contract to the lowest responsible bidder, unless the awarding officers believe that the prices bid are too high; or that the bidders have combined to

prevent competition; or that the public interest will be subserved thereby.

MANDAMUS—*to compel performance of duty by officers.*

While mandamus will not lie at the suit of the lowest bidder to control the action of officers vested with discretion who have exercised their discretion reasonably and in good faith, where, in a proper case, it is made to appear that the officers have abused the discretion vested in them, and have acted fraudulently, maliciously, arbitrarily and capriciously, mandamus will lie.

OPINION OF THE COURT BY LINDSAY, J.

Petitioner filed its petition alleging: That the board of harbor commissioners of the Territory published a call for tenders for furnishing the materials and workmanship required in the construction of a wharf, shed and approach, at Kaunakakai, Molokai, according to specifications and form of proposal mentioned in the call; that, pursuant to the call certain sealed tenders of bidders, including petitioner's were filed and opened by the board on June 10, 1925; that petitioner's tender was made in all respects as required by the board, and in compliance with law and was accompanied by a certified check for $5000; that, by virtue of its tender, petitioner became and was the lowest responsible bidder, and therefore was entitled to receive a contract for the contemplated work and material, and it thereupon became the duty of the board to award such contract to petitioner; that at a meeting of the board held on said 10th day of June, 1925, after said tenders were opened, said tenders were considered, and action with reference to the awarding of a contract was postponed until the next meeting of the board; that at the next meeting of the board, the chairman recommended that all of the tenders submitted be rejected, whereupon the board, in writing, notified petitioner, that all of the tenders submitted, including that of petitioner, were rejected, and that new tenders

would be called for, such written notification reading as follows: "You are hereby advised that the bids which were opened on June 10, 1925, for the construction of the new wharf at Kaunakakai, upon the advice of the attorney general, are hereby rejected. New tenders will be called for at an early date, and it is hoped you will submit a tender at that time."

The petition then proceeds to allege: "Petitioner's said tender was rejected by said board, not in the exercise of any discretion vested in it, or the members thereof, by law, but arbitrarily and capriciously, and upon the pretext and subterfuge that said tender was not, or might not be, the lowest tender."

Pursuant to the prayer of the petition, an alternative writ issued ordering the board to award the contract to petitioner or to show cause to the contrary.

Respondents demurred to the alternative writ and petition on several grounds. The circuit judge in a written decision sustained the demurrer, and a decree having been entered, the case comes here on appeal from said decree.

In his decision the circuit judge did not consider it necessary to pass upon all of the grounds presented by the demurrer, but based his decision solely on the question of the capacity of petitioner to maintain the suit upon the state of facts made out by the pleadings, saying in that respect: "The main and vital question raised by the pleadings is whether the petitioner has presented a case which entitles it to the relief sought. The sole capacity in which the petitioner sues is as the lowest responsible bidder whose tender was rejected. Its complaint is that in rejecting *its* bid the board did not exercise the discretion vested in it by law but acted arbitrarily and capriciously." In answering, what he thus expressed to be the main and vital question, in the negative, the circuit judge held, that the tender of petitioner was a

mere offer, and, until its acceptance, created no contractual relation between the parties; that if petitioner acquired any right through its tender to have the contract awarded to it such right was not a contractual right but one conferred upon it by law; that the only statutory provision upon which such a right might be predicated is contained in section 1478, R. L. 1925; that the provision of the statute that a written contract shall be made with the lowest responsible bidder was not intended to impose upon the officer or board representing the Territory an absolute obligation to let the contract, but that the legislative mandate is to let the contract to the lowest responsible bidder in the event it is let at all; that such a bidder acquires no right under the statute to have the contract awarded to him so long as it is not awarded to any one else; that the obligation to let contracts for public work to the lowest responsible bidder was imposed upon public officials, not for the benefit of competing contractors, but for the benefit of taxpayers; that the lowest responsible bidder has no right to question the motives which prompt the rejection of his bid so long as none of the bids were accepted; and that, even though "the board may have acted with extreme arbitrariness and capriciousness and with the sole intention of defeating the petitioner's bid yet unless its action resulted harmfully to the public interest, for the protection of which the power to reject all bids was conferred upon the board," the petitioner was not entitled to the relief prayed for.

It is contended by counsel for respondents that the circuit judge properly sustained the demurrer on the grounds stated in his opinion and, furthermore, that, even if the demurrer was improperly sustained on the grounds considered by the circuit judge, the decree appealed from should not be upset if the demurrer is sustainable upon

any of the grounds urged therein. This contention is undoubtedly sound and has been frequently adopted by this court. (See *Colburn* v. *Holt,* 19 Haw. 65, 66; *Con. Amusement Co.* v. *Hughes,* 22 Haw. 550, 557; *Lee Lun* v. *Henry,* 22 Haw. 165, 173; *Calaca* v. *Caldeira,* 13 Haw. 214.) Upon this view counsel on the oral argument argued that the decree of the lower court should be sustained on another ground than that given by the circuit judge, namely, that the alternative writ does not state grounds justifying the issuance of said writ, because the allegations of petitioner therein that "petitioner's said tender was rejected by said board, not in the exercise of any discretion vested in it, or the members thereof, by law, but arbitrarily and capriciously, and upon the pretext and subterfuge that said tender was not, or. might not be, the lowest tender" are not allegations of fact but mere conclusions of law.

Section 1477, R. L. 1925, provides that "No expenditure of public money, except for salaries or pay of officers   *   *   *   where the sum to be expended shall be one thousand dollars or more, shall be made, except under contract let after public advertisement for sealed tenders, in the manner provided by law."

Section 1478 provides that "All such contracts   *   .*   * shall be made with the lowest responsible bidder after publication of a call for tenders   *   *   *.   *   *   * All bids shall be accompanied by a certificate of deposit or certified check, on a bank doing business within the Territory, for a sum equal to five per cent. of the amount bid   *   *   *.   *   *   *  All bids shall be sealed and delivered to the officer advertising therefor and shall be opened by him at the hour and place to be stated in the call for tenders in the presence of all bidders who attend, and may be inspected by any bidder. All bids which do not comply with the requirements of the call for tenders

shall be rejected. When the officer advertising for bids believes that the prices bid are too high or that the bidders have combined to prevent competition, or that the public interest will be subserved thereby, he may reject all bids."

The object of advertising for tenders is to secure fair competition and prevent favoritism and extravagance. (*Lucas* v. *Amer. Haw. E. & C. Co.,* 16 Haw. 80.) Under the statute, when tenders for a public contract have been duly made and bids have been filed in pursuance thereof, it becomes the duty of the awarding officers to consider first, whether all the legal formalities regarding such tenders have been complied with, and all bids which fail in this respect must be rejected. It then becomes the duty of the awarding officers to consider and determine which of the bidders is the lowest responsible bidder and in determining the question of responsibility of a bidder, awarding officers have undoubtedly a wide discretion. "But that discretion must be exercised fairly, honestly and judicially." *Wilson* v. *Lord-Young Eng. Co.,* 21 Haw. 87. These preliminary matters having been settled, in plain language the statute next requires the awarding officers to let the contract contemplated to the lowest responsible bidder unless (a) the awarding officers believe that the prices bid are too high; or (b) that the bidders have combined to prevent competition; or (c) that the public interest will be subserved thereby; in any of which events the awarding officers may reject all bids. It is thus seen that the awarding officers are not given absolute discretion to reject any or all bids, their discretion being limited to the three grounds enumerated in the statute.

Although the allegations in the petition and alternative writ regarding the grounds or purported grounds upon which the bid of petitioner was rejected are not pleaded

as definitely and with such detail as perhaps they might have been, we are of the opinion that these allegations are not mere conclusions of law but are allegations of fact and sufficiently negative the notion that respondents, in rejecting petitioner's bid, did so in the exercise of the discretion imposed upon them by the statute.

Assuming then, as we do, that the allegations in the alternative writ sufficiently set forth that petitioner was the lowest responsible bidder and therefore entitled to receive the contract; that respondents did not reject the bid, or all the bids, in the exercise of the discretion reposed in them by law, or because they believed the prices bid were too high, or because the bidders had combined to prevent competition, or because they believed that the public interests would be subserved by such rejection, but that respondents in rejecting the bids did so arbitrarily and capriciously and upon the pretext and subterfuge that the bid of petitioner was not, or might not be, the lowest bid, it becomes necessary to consider the chief question involved, namely, whether upon these facts the demurrer should not have been overruled, respondents compelled to answer, and the case been heard by the circuit judge upon its merits. In other words, the demurrer having admitted the truth of the allegations of the alternative writ, would petitioner be entitled, after a trial and establishment of the truth of its allegations, to a writ of mandamus compelling respondents to award to petitioner a contract for the work and materials contemplated? Assuming that it is the law in this jurisdiction that when tenders have been duly made for a public contract it is mandatory upon awarding officers to award such contract to the lowest responsible bidder and no legal reason exists why such contract should not be so awarded, may the awarding officers be compelled by mandamus, on the suit of the lowest responsible bidder,

to perform their duty and award the contract to the lowest responsible bidder?

It is the contention of counsel for respondents that, granted that a party bidding for a public contract is the lowest bidder and as such entitled to be awarded the contract, and granted that the awarding officer has, not in the fair and honest exercise of his discretion, but in absolute abuse thereof, arbitrarily and capriciously, and upon specious pretext and subterfuge, rejected the bid of such lowest responsible bidder, the awarding officer may not, by mandamus, be compelled to do his duty, and the lowest responsible bidder is helpless and without remedy. Carried to its logical conclusion the result of this contention would be that in any case, even though it appeared that in rejecting the bid of the lowest responsible bidder, the awarding officer had acted corruptly and fraudulently, in plain abuse of his discretion and in violation of his bounden duty, the defrauded bidder would be entirely helpless and the law afford him no remedy.

In support of this contention counsel for respondents have cited numerous cases. Do these authorities sustain the contention of respondents?

In the case of *State* v. *Dreyer*, 167 S. W. 1123, decided by St. Louis court of appeals, Missouri, in which the question was, as in the instant case, whether mandamus will lie at all, and, if so, will it lie at the instance of a party situated similarly to the petitioner herein, the court discussed at length many of the cases cited by respondents as well as other cases of similar tenor, and clearly pointed out that these cases were not authority for the extreme position contended for by respondents, but that, in practically all of these cases, in which the right to mandamus had been denied, it did not appear that the writ was sought upon the grounds of fraud, collusion, bad faith or improper motives, the court saying

in this regard (p. 1128) : "It is sometimes broadly stated that the duties of officers intrusted with the letting of such contracts involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by mandamus.    See High's Extraordinary Legal Remedies, §92.   But a consideration of the authorities makes it appear that there is no ground for any reasonable distinction between a case involving the letting of contracts for public work and any other in which the exercise of discretion is involved, but where such discretion is palpably abused, or not, in fact, exercised at all; and that the cases in which the writ has been denied where the letting of public contracts was involved are, for the most part at least, in accord with the general rule that the writ will not lie to direct or control the discretion of public officers, exercised fairly, impartially, and in good faith, and have no application to a case where fraud, collusion, bad faith, or improper motives may be made to appear;" and the court quoted with approval the footnote to *Butler* v. *Darst,* 38 L. R. A. (N. S.) 653, as follows: "The general rule as deduced from the cases is that, in awarding contracts of this nature, public authorities are vested with discretion in determining who is the lowest and best bidder, and their discretion will not be interfered with by the courts, even if erroneous, *provided it is based on a sound and reasonable discretion founded on facts and exercised in good faith, in the interest of the public, without collusion or fraud, nor corruptly, nor from motives of personal favoritism or ill will, and not abused."* In *State* v. *Dreyer, supra,* the court in deciding that mandamus will lie in such a case as the one at bar said (p. 1127) : "There can be no doubt that a writ of mandamus will not issue to direct or control the judgment or discretion of public officers.   The office of such a writ is, in general, to compel the performance of

a mere ministerial duty.  But it does not follow that mandamus will never lie to compel the performance of a duty where there is an official discretion, with respect to the subject-matter involved, reposed in the officer or officers sought to be coerced by the writ.  It has been repeatedly held that mandamus will lie where there has been a palpable abuse of discretion; that discretion must always be reasonably, fairly, and impartially exercised, in good faith; and that whether or not it has been so exercised is a question for the courts.  And the great weight of authority is to the effect that mandamus will lie to correct or control the action of administrative bodies and other tribunals, notwithstanding that an official discretion may be reposed in them, where they have, in fact, refused to exercise such discretion in a lawful manner, impartially, and in good faith" (citing numerous cases).  And the court quotes (p. 1128) from *State* v. *Public Schools,* 134 Mo. 296, as follows: "While it is generally true that mandamus will not lie to control the discretion of an inferior tribunal in whom a discretion is vested in the performance or nonperformance of certain duties devolved upon it by law, it is well settled that, if the discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise.  Such an abuse of discretion is controllable by mandamus."

We agree with the court in *State* v. *Dreyer, supra,* that few if any of the cases cited by respondents go as far as contended for by respondents, for in most of these cases it clearly appears that no fraud, collusion, bad faith, utter abuse of discretion or other improper motives were present; for example, in *Commonwealth* v. *Mitchell,* 82 Pa. St. 343, mandamus was held not to lie *in the absence of clear proof of fraud or bad faith.* In *Kelly* v.

*Chicago,* 62 Ill. 279, it was held that mandamus will not lie *in the absence of fraud.*

In *Madison* v. *Harbor Board of Baltimore,* 76 Md. 395, petitioner sought, by mandamus, to compel the harbor board to award him a dredging contract. The court denied the writ to petitioner because, from the pleadings it did not appear that any fraud was imputable to the board in rejecting the bid, saying at page 396: "Much was said, and some authorities were cited, in reference to a case where public officers are guilty of fraud in the exercise of their public functions. But this is not such case. No fraud is imputed to the members of the harbor board, and the charge in the petition is that said contract was not awarded to the petitioner, although he was the lowest bidder, and in all other respects was eligible under the provisions of the ordinance;" and, on pages 397, 398, "The decision of public officers, like these commissioners, upon questions such as those here involved shall not be reviewed by the courts—*unless it can be shown that such public officers have been guilty of fraud in the exercise of their discretion"* (italics ours). "And when fraud is established there is ample power in the courts to protect both the individual bidder and the general public."

In the case of *Molloy* v. *New Rochelle,* 30 L. R. A. (N. S.) 126, which was a case in which the plaintiff alleging himself to be the lowest bidder sought to recover damages for the failure of respondent to award him a public contract, it was held that no action for damages lay under such circumstances. In a concurring opinion in that case Vann, J., said (p. 134): "The plaintiff had no right to recover damages from the defendant for breach of contract, because there was no contract, as is clearly shown by Judge Chase, in his opinion. The remedy of the plaintiff was by mandamus to compel the execu-

tion of a contract in accordance with the statute.  *  *  *
The rejection of his bid, and the acceptance of one higher
by several thousand dollars, was arbitrary and illegal. It
was presumptively corrupt, for favoritism is one form
of corruption.  For such a violation of law by those who
represent the city, there should be a remedy against the
city, and, as it cannot be by way of damages for breach
of contract, it should be by mandamus.   Otherwise com-
petition may be stifled through the want of inducement
to bid for public work." See also *Arensmeyer, etc.,* v.
*Wray,* 194 N. Y. S. 398, in which the court granted
mandamus to the lowest responsible bidder saying (p.
400) : "Under these circumstances the courts will control
the action of the board, and require an observance of the
statutes.   The board has not the same latitude with re-
spect to the letting of contracts as an individual.   It is
required to let a contract to the lowest responsible bidder
who will give the security required by the board, and it
cannot reject all of the bids unless there is some substan-
tial reason for that course."

The doctrine enunciated by the cases cited by respond-
ents, that mandamus will not lie to control the action
of officers vested with discretion who have exercised their
discretion reasonably and in good faith, without fraud,
nor corruptly, nor from false motives of personal favorit-
ism nor ill will, is undoubtedly sound.   On the other hand,
from these cases the inference is irresistible that, in a
proper case, where it is made to appear that the officers
have abused the discretion vested in them, and have acted
fraudulently, maliciously, arbitrarily and capriciously,
mandamus will lie.   While the power of the courts
by mandamus to compel officers to fulfill their duties is
undoubtedly broad, this court has frequently held that
the exercise of discretionary powers vested in officials may
not be interfered with by mandamus, yet it is not to be

lost sight of that, as expressed by our statute (Sec. 2683, R. L. 1925), "The object of this order" (mandamus) "is to prevent a denial of justice, and it therefore issues in all cases where the law has assigned no specific relief by the ordinary means, or even where a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever;" and the writ of mandamus (Sec. 2686, R. L. 1925) "may be directed to public officers to compel them to fulfill any of the duties attached to their office, or which may be legally required of them."

In a case wherein it appears that the only grievance of petitioner is that, although he was the lowest responsible bidder, his bid, as well as all of the other bids submitted, has been rejected, no fraud or other evil motive being imputed to the awarding officer, the action of the awarding officer in rejecting the bids, even though such action may have been erroneous, will not be reviewed by the courts. But where from the allegations of the petition it is made to appear that fraud or other evil motives actuated the awarding officers in rejecting the bids, the petitioner is entitled to an opportunity to establish the truth of these allegations and, if this is accomplished, in the language of *Madison* v. *Harbor Board of Baltimore, supra,* "there is ample power in the courts to protect both the individual bidder and the general public."

Having found that, under the facts set forth in the alternative writ, mandamus will lie, the only remaining question is whether it will lie at the suit of a party occupying the position of petitioner herein. Although there is considerable conflict of authority on this subject, we are of the opinion that in a case such as this where

it is obvious that petitioner has a peculiar interest, in addition to that of a taxpayer, in the enforcement of an official duty, the better rule, founded on reason, is that petitioner has a footing in court to maintain the action. "It is unquestionably the law that if a private individual has a special and peculiar interest in the enforcement of a public right or the performance of a public duty apart from the interest that he has as a member of the people at large, he is entitled to protect or enforce it by mandamus." 26 Cyc. 403. "There is, we think, a decided preponderance of American authority in favor of the doctrine, that private persons may move for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law-officer." *Union Pacific R. R.* v. *Hall,* 91 U. S. 343, 355. "Mandamus lies to enforce the performance of public duties. It does not lie at the suit of an individual for the enforcement of those rights which he holds in common with the public at large, but it does lie when his personal and particular rights have been invaded beyond those that he enjoys as a part of the public, and that are common to everyone." *Robbins* v. *Bangor Ry. & Electric Co.,* 62 Atl. (Me.) 136, 139. In *St. Landry Lumber Co.* v. *Mayor,* 99 So. (La.) 687, 698, the statute provided that the municipality "shall let the contract to the lowest responsible bidder, who can give satisfactory security." The court said: "The first question to be determined is as to whether an unsuccessful bidder, alleging his bid to have been the lowest and his responsibility good, has a standing in court to assail the action of the municipal authorities in refusing to award him the contract. This we have answered in the affirmative in cases previously decided. See Fourmy v. Franklin, 126 La. 151, 52 South. 249; State v. Board of Agriculture, 122 La. 677, 48 South. 148." In *State* v. *La. State Board of Agriculture & Im-*

*migration,* 48 So. 148, 149, 150, the court said: "The reasoning that the bidder has no right of action because the statute is enacted in the interest of the public solely, and not at all in his, does not cover a case like the present."

Entertaining the views above expressed, we are of the opinion that the decree of the circuit judge sustaining the demurrer should be reversed, and it is so ordered, and the case remanded to the circuit judge with instructions to overrule the demurrer.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for petitioner.

*E. H. Beebe* (*W. B. Lymer,* Attorney General, and *Marguerite K. Ashford,* First Deputy Attorney General, on the brief) for respondents.