## LIVINGSTON v. D'ORGENOY.

### (District Court, D. Louisiana. 1809.)[1]

EJECTMENT—STAY AT REQUEST OF THIRD PARTY.
    Plaintiff brought ejectment. Defendant justified the ouster as an official act while marshal of the United States, in pursuance of an act of congress, and denied any other removal, interference, or possession of the premises. Defendant was no longer an officer of the United States. The attorney of the United States moved that the proceedings be stayed. *Held* that, as it would be wrong to decide the rights of the United States in a suit against one no longer an officer thereof, the proceedings would be stayed.

### In Ejectment.   Proceedings stayed by a third person.

The original petition stated that the plaintiff was in possession of the batture, a tract of land within the limits of the city of New Orleans, and that the defendant ousted him of his possession, and still kept him out. Be-

---

[1] This case has been heretofore reported in 1 Mart. (O. S.) 86, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

sides a claim of $150,000 for damages, it concluded with a prayer that the plaintiff might be restored to his possession. The defendant justified the ouster as an official act while he was marshal of the United States, in pursuance of an act of congress (8 Laws U. S. 317); and he denied any other removal, interference, or possession of the premises. The pleadings were amended by consent. The new petition stated the plaintiff's title to the premises, the claim set up by the corporation of the city, the judgment thereon, and a perpetual injunction quieting his title, and the ouster. It concluded with a prayer for restitution and general relief. To this amended petition the defendant's answer was the same as to the original, except that the last clause, denying the removal, otherwise than as marshal, the interference, and possession, was omitted. The plaintiff demurred to the answer, and the defendant joined in the demurrer. When the demurrer was about to be argued, the attorney of the United States, T. Robinson, read the affidavit of James Mather, stating the possession of the United States, their exercise of acts of ownership on the premises, their officers having at one time allowed the people to take dirt therefrom, and at another recalled this permission, the want of interest in the defendant, and the deponent's belief that the sole object of the plaintiff was to gain possession and oust the United States. The attorney next drew the attention of the court to the original and amended pleadings. He observed that the first petition claimed $150,000, and the answer thereto denied everything but the ouster, which it justified; that the second petition claimed no special damage, and the answer was amended by striking out whatever had been at first denied. On these suggestions, he moved that the plaintiff be ordered to show cause why the proceedings should not be stayed, as fictitious and collusive, and because, too, the defendant claimed not (notwithstanding his implied admission in the answer) any right of possession or property in the premises, and therefore was entirely uninterested, while the interest of a third party, viz. the United States, was sought to be affected, and the possession of the premises obtained from them. On this the plaintiff offered to allow the United States to be made parties to the suit; but the offer was not accepted, on the ground that the United States could not be made defendants in any case, and in the present could not make themselves plaintiffs, for no right of theirs had been violated, and they had nothing to claim. The plaintiff next showed cause. He denied the fiction and collusion, the want of interest in the defendant, and that his only motive in bringing the suit was to affect the interest of the United States. At his request, and by consent, the defendant was sworn. He deposed that he did not claim any right of property or possession in the premises, and asserted he would not prevent the plaintiff from taking possession if he attempted it. He admitted he had given his consent to the amendment of the pleadings, on the assurance he had received that the plaintiff would claim no damages from him, and had no other object in view but the possession of the premises, and that, if such assurance had not been given him, he never would have consented to the amendment. He declared that no communication, verbal or written, had passed between him and the plaintiff, except a letter announcing the plaintiff's intention to bring the suit. The attorney having advanced, as a presumption of collusion, that Paillette, the general agent of the plaintiff, was the defendant's counsel, the plaintiff admitted the fact, but said that Paillette had no other agency in the plaintiff's behalf, but receiving the petition inclosed to him from New York, filing it, and delivering the plaintiff's letter to the defendant. Paillette, being sworn, deposed he had given the defendant to understand that the plaintiff would not claim damages from him, and expected only to gain possession, and that he had advised the defendant to consent to the amendment. A letter of the defendant to the recorder was then read. It contained these expressions: "It appears that Mr. Livingston has desisted from all pursuit against me, and that his only object is to be reinstated in his possession." In the conclusion the defendant begged the recorder not to communicate this information, which he declared to appear to him very true. Another letter was also read, in which the defendant declined allowing the law officers of the corporation to join his counsel in the defense of the suit.

T. Robinson and Moreau & Martin, for the United States.
Paillette & Alexander, for defendant.

HALL, District Judge. It appears that the defendant is not in the least interested in the decision of this case. No damages are to be recovered of him, because none are prayed for. He is not to be deprived of possession, because he never had any; and, if ever he had, he has since ceased to hold it. The circumstance of Paillette being the plaintiff's agent and the defendant's counsel at first blush might excite suspicion; but, when it appears he has always been of counsel for the defendant in his causes, collusion cannot be inferred from it. Although there is no direct evidence of collusion between the parties, yet it is certain a kind of understanding exists between them. The impression made on the defendant's mind, clearly, was that he was totally hors de combat; that no damages were to be recovered of him, and therefore he was totally uninterested, and became quite indifferent as to the issue of the suit; for, he has told us he had neither possession nor property, and he should have averred so in the pleadings. I do not think that his refusal to blend his interest with that of the corporation ought to have any influence in the decision of the motion. It is clear that the United States claim the premises. They have dispossessed the plaintiff, and his object now is to regain the possession. If any one is in possession, the United States are; and this fact is sworn to by Mather. The interests of the United States alone are at stake. The defendant cannot be expected to defend them. It is immaterial to him what opinion the court pronounces on the legality of the president's orders, or whether it adjudges the possession of the batture to the plaintiff or not. There is nothing adverse in the case. Courts of justice are to decide on real contests. They are never to be used as instruments to work injustice, wound the feelings or affect the interests of others, through the intervention of fictitious or uninterested parties. The defendant can only be considered as a feigned ejector. It is a standing rule in actions of ejectments that no plaintiff shall proceed to recover the land, without giving the tenant in possession a declaration and making him a defendant. Otherwise, the court would be instrumental in doing an injury to a third person, because a declaration might be served on a stranger, a feint defense made and a verdict, judgment and execution obtained, without the tenant having any notice of it. This would be the case if the court were to proceed in this suit. The defendant is no longer an officer of the United States. It would be wrong to decide on their rights in a suit against him. If the United States, who claim the premises, cannot be made defendants, it becomes their dignity to establish a tribunal in which the controversy may be determined. It is much regretted that it has not been already done. Proceedings are not often stayed at the instance of a third party, but the court certainly possess the power to stay them. In the case cited from Cowper, Lord Mansfield said: "If the Chevalier d'Eon had applied to the court, as a person whose feelings were sought to be wounded in the suit, and prayed that the suit might be stopped, the court would have instantly done it." Proceedings stayed.