HAWAII NATIONAL BANK, HONOLULU *v.* TOM OKINO, CIRCUIT JUDGE, FIRST CIRCUIT COURT.

No. 4904.

NOVEMBER 12, 1969.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ., AND CIRCUIT JUDGE KABUTAN IN PLACE OF MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

Petitioner, Hawaii National Bank, seeks a writ of mandamus commanding Respondent, Judge Tom Okino of the First Circuit Court, to follow and implement the decision of this court in *Akamine & Sons, Ltd.* v. *American Security Bank,* 50 Haw. 304, 440 P.2d 262 (1968), *rehearing denied* 50 Haw. 368 (1968). American Security Bank has intervened in opposition to the petition for mandamus and alternative writ of mandamus.

In the *Akamine* case Hawaii National Bank intervened in an action by the mortgagor, Akamine & Sons, Ltd., to enjoin a sale by American Security under a power of sale given in a mortgage by the corporation to Ameri-

can Security containing a dragnet clause. We limited the enforceability of such clauses and then held quite explicitly and unambiguously that

American Security is entitled to receive proceeds from the foreclosure sale sufficient to cover the unpaid balances of the original loan of $250,000 and the subsequent loan of $105,000 with interest, costs, attorney's fees and other expenses properly chargeable to it. Hawaii National is entitled to the proceeds remaining to the extent that they may be required to cover its loan secured by its mortgage. *Id.* at 313, 440 P.2d at 268.

A writ of mandamus will issue according to section 659-2 of the Hawaii Revised Statutes where "the slowness of ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it...." Where there is a duty to act the writ has been issued in prior cases before this court. *Marshall Construction Co.* v. *Bigelow,* 29 Haw. 48 (1926); *In re Sherwood,* 22 Haw. 381 (1914); *Harris* v. *Goodale, Collector General of Customs,* 2 Haw. 130 (1858). In this case we find that the jurisdictional basis for a writ of mandamus is present and that it was the duty of the lower court to comply with the mandate of our prior decision.

By the decision of this court in the *Akamine* case on appeal and the denial of rehearing, there was an express and final disposition of the funds in dispute between American Security and Hawaii National.

Respondent, Judge Okino, and intervenor, American Security, assert that American Security will have been denied their day in court with respect to the question whether the loans in dispute were part of "the same transaction or series of transactions." This issue was raised on

the petition for rehearing which was denied. It is not within the lower court's discretion to remedy subsequently any error which in its opinion might have been made by this court.

Furthermore, respondent and intervenor have evidently missed the thrust of our opinion in *Akamine*. In narrowly construing the dragnet clause and limiting it to loans involving the same transaction or series of transactions, we set down that test for those situations which are less than what was involved in *Akamine*. The facts in *Akamine* could never have met that test. Not only were the parties in the first loan and the loan containing the dragnet clause (the second loan) different, but with respect to the fourth loan and the loan containing the dragnet clause, the operations themselves were quite distinct. The loans in issue went to finance Val Super Market, Ltd., not Akamine & Sons, Ltd. Therefore no issue of fact was left to be resolved once the rule was set down. At bottom the objections raised are more properly addressed to the wisdom of restrictive statutory construction. Arguments such as those are surely jurisprudential, not constitutional.

The judgment filed by respondent, Judge Okino, on September 10, 1969 is hereby vacated. A peremptory writ of mandamus will be entered directing the respondent to enter a judgment first distributing to American Security Bank such portion of the proceeds from the foreclosure sale as is necessary to cover the unpaid balances of the original loan of $250,000 and the subsequent loan of $105,000 with interest, costs, attorney's fees and other expenses properly chargeable to said loans, not including any loans other than the aforesaid two loans, and secondly distributing the proceeds remaining to Hawaii National Bank to the extent that they may be required to cover its loan secured by its mortgage.

Petition granted.

*Arthur B. Reinwald* (*Anthony & Waddoups* and *Mau & Ho* of counsel) for petitioner.

*Thomas M. Pico, Jr.,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, with him on the brief) for respondent, *Judge Okino.*

*Walter G. Chuck* (*Chuck & Fujiyama* of counsel) for intervenor, American Security Bank.

DISSENTING OPINION OF KOBAYASHI, J.

Judge Okino's action on the remand of *Akamine* was entirely proper, and the writ of mandamus here sought should be denied.

The facts of the case were related in some detail in 50 Haw. at 304-307. A brief reiteration will suffice for present purposes.

The Akamines and corporations under their control borrowed from American Security Bank a total of $585,000 in four loans. The dates, amounts and security of each loan were:

1. August 2, 1960; $190,000; mortgage on chattels not here relevant.

2. September 26, 1960; $250,000; mortgage on real property.

3. February 14, 1961; $105,000; an additional charge mortgage on the same real property as the second loan.

4. August 22, 1962; $40,000; mortgage on different real property not here relevant.

The second mortgage contained a dragnet clause which purported to secure past and future loans "as additional charges against all the property hereby mortgaged...."

In August and September 1962, the Akamines mortgaged the same real property to Hawaii National Bank.

The trial court held that all four of American Security Bank's loans were secured by the dragnet clause of the second mortgage on the authority of Act 255 S.L.H. 1939, now compiled as HRS § 506-1, which provided in pertinent part:

A mortgage may secure the repayment of a past debt, a debt incurred at the time the mortgage is executed, or a debt incurred for advances which may be made by the mortgagee subsequent to the execution of the mortgage even though the mortgagee is under no contractual duty to make such advances. . . .

On appeal this court announced a new interpretation of this statute:

[T]he statute does not require us to enforce a dragnet, or anaconda, clause in a mortgage as to debts or obligations not of the same kind as the specific principal debt or obligation for which the mortgage is given. Unless the prior or subsequent advance relates to the same transaction or series of transactions, the mortgage must specifically refer to it for the advance to be secured. . . .

The last two paragraphs of the court's opinion were:

American Security is entitled to receive proceeds from the foreclosure sale sufficient to cover the unpaid balances of the original loan of $250,000 and the subsequent loan of $105,000. . . . Hawaii National is entitled to the proceeds remaining to the extent that they may be required to cover its loan secured by its mortgage.

Reversed and remanded for further proceedings.

On remand Judge Okino was faced with considerable difficulty. The part of the opinion formulating a new test speaks prospectively, as though the evidence and contentions of the parties in the present case with respect to the issue of relatedness had not yet been heard. (In actu-

ality, the issue of relatedness had not been tried, as it was irrelevant under the then prevailing law.)[1] The final paragraphs of the opinion, however, speak as though this court, an appellate court, had already determined that the first and fourth loans were not related to the second loan which contained the dragnet clause. To further confuse Judge Okino, this court concluded in its opinion: "remanded for further proceedings." Judge Okino re-

---

[1] In his decision, Judge Okino stated:

It should go without saying that, in view of the fact that the "same transaction rule" restricting the scope of the "dragnet clause" was set down for the first time by the Supreme Court, there has never been a necessity for a factual determination with respect to that issue at any previous state of these proceedings. It surely cannot be said that the Supreme Court intended to rule on the issue without either party having had benefit of a hearing thereon.

The record herein indicates, furthermore, that although the matter was not essential to its cause during the course of the first trial, Respondent did at that time make several offers to prove that all four of its loans arose out of the same transaction or series of transactions. Counsel for American Security said, at page 315, 11. 13-24 of the Transcript of the first trial:

". . . We offer to prove, Your Honor, that though they were separate corporate entities, the monies went back and forth and that in fact, the original request came for a loan to the bank for, from the bank for $440,000, which by the way, is the difference between, is composed of $250,000 on the mortgage and $190,000 on the continuing line of credit agreement which is the maximum permitted to be loaned by a bank to any related entities. And that these two mortgages, the chattel mortgage and the original mortgage on the land are part and parcel of one transaction, and that this was with their understanding, with their prior understanding and with jurisdiction."

At page 316, 11. 15-21, the transcript reads:

"I offer to prove that the loan made to Akamine & Sons of $250,000 and the loan made under the continuing line of credit of $190,000 to Val Super Market which was endorsed by Akamine & Sons were part and parcel of one loan, which permitted the bank to lend the maximum under the law of $440,000 to two related entities, and that Akamine & Sons, Ltd. and Val Super Market treated these two loans as one. . . ."

Because it was of the opinion that the dragnet clause was entitled to a literal interpretation so as to encompass all prior and subsequent advances, the court refused to permit Respondent to introduce evidence tending to show that all four loans made by American Security to Akamine & Sons arose out of the same transaction or series of transactions. Of course, until the Supreme Court set down the rule of law restricting the scope of the dragnet clause, such evidence was, as the trial court said in rejecting Respondent's offers of proof, irrelevant.

solved this ambiguity and met the requirements of due process by allowing American Security Bank to try the issue of relatedness.

On these facts it is clear that Judge Okino's decision to allow relatedness to be tried was entirely proper, and indeed, it was constitutionally required because American Security Bank had not previously had an opportunity to try this issue. It certainly is not merely jurisprudential as the majority states! The constitutional requirement of an opportunity for a trial in the context of the present case is secured by the 14th Amendment to the U. S. Constitution, and no less guaranteed by the Hawaii Constitution, Article I, Section 4. The case of *Saunders* v. *Shaw,* 244 U. S. 317 (1917), is directly in point. I am at a loss in comprehending the majority's failure to discuss it and disturbed and concerned with the majority's refusal to grant to appellant the substantive right guaranteed by the U. S. Constitution and the State of Hawaii Constitution.

If a case involving a dragnet clause were tried in which the trial court refused to allow a party to show the relatedness of a series of mortgages, this court would have no difficulty in reversing. Yet this court now states that, by its ambiguous decision in *Akamine* and by its denial without opinion of the motion for a rehearing, the issue of relatedness is resolved against a party which has never had a chance to show relatedness.

A majority of this court states: "The facts of *Akamine* could never have met that test." Even so, American Security Bank is constitutionally entitled to try. The United States Supreme Court has ruled:

Probably the majority ... thought that it was so plain on the uncontroverted facts ... that to remand it would be an empty form—a mere concession to technicality. It may turn out so, but we do not see in the record an absolute warrant for the assumption and therefore can-

not be sure that the defendant's rights are protected without giving him a chance to put his evidence in. *Saunders* v. *Shaw*, 244 U. S. at 319 (Holmes 1917). A majority of this court sees in the record an absolute warrant for its assumption that the mortgages in this case were unrelated. The majority says that because the second loan was to Akamine & Sons, Ltd., and the first was to Val Super Market, Ltd., they fail the test of relatedness. But surely American Security Bank is entitled to a chance to prove that "Val Super Market, Ltd." and "Akamine & Sons, Ltd." are synonyms. Surely the trial court is not bound by corporate veils! The majority says the operations involved in the second and fourth loans "were quite distinct," notwithstanding that the second loan was to Akamine & Sons, Ltd., and the fourth was to both Akamine & Sons, Ltd. and to Val Super Market, Ltd. This court has failed to articulate a test of relatedness and to explain how these mortgages failed to pass because of the obvious fact that the appellant never had his day in court before the trial court and this appellate court has no power to try the issue in the first instance.

I believe the court went too far in the *Akamine* opinion in attempting to resolve the facts of relatedness, which facts had not been tried. Rather than admit their error the majority opines "The facts of *Akamine* could never have met that test," and in a peremptory manner declares:

It is not within the lower court's discretion to remedy subsequently any error which in its opinion might have been made by this court.

The majority abuses the power of the appellate court and the result to American Security Bank is a denial of fundamental rights guaranteed by the State of Hawaii and United States Constitutions.

Circuit Judge Toshio Kabutan joins in this dissent.